UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SRS DISTRIBUTION INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>ACHTEN QUALITY ROOFING INC. et al.,<br><br>    Defendant. | CASE NO. 3:23-cv-05823-DGE<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 30) |

## I  INTRODUCTION

Before the Court is Plaintiff's Motion for Default Judgment (Dkt. No. 30). For the reasons that follow, the motion is GRANTED in part and DENIED in part.

## II  FACTUAL AND PROCEDURAL BACKGROUND

This case concerns non-payment on a contract for construction supplies. Plaintiff SRS Distribution, Inc. ("SRS"), doing business as Stoneway Roofing Supply ("Stoneway"), is a Delaware corporation based in Texas that "provides contractors and homeowners with roofing

materials and supplies."[1]  (Dkt. No. 9 at 1, 3).  Defendant John Achten is the President of Achten Quality Roofing ("AQR"), a Washington corporation based in Tacoma, Washington.  (*Id.* at 2.)  Achten, on behalf of AQR, entered into a credit agreement and personal guarantee with Stoneway, under which Stoneway furnished AQR with building supplies.  (*Id.*)  Stoneway alleges that Achten and AQR failed to pay invoices for those supplies, the outstanding balance of which is $610,455.92.  (Dkt. No. 30 at 5.)  In support of its motion, Plaintiff provided voluminous itemized invoices, detailing those transactions.  (*See* Dkt. No. 32-3.)  Plaintiff further alleges Achten improperly transferred AQR's assets to other entities and individuals, including his daughters Priscilla and Ruby Achten, to shield those assets from creditors.  (*See* Dkt. No. 9 at 4–5, 9–11).  As part of this scheme, Plaintiff alleges Priscilla and Ruby Achten formed the Washington corporation ACT III Roofing Systems ("ACT III"), which they dissolved three months later.  (*See* Dkt. 30 at 6).  Plaintiff additionally claims that John Achten sold real property he owned in Graham, WA for a sum of $1,150,000, as evidenced by public records.  (*See id*; Dkt. Nos. 31-4, 31-5.)  John Achten filed for personal bankruptcy, but that action was dismissed.  (*See* Dkt. Nos. 12, 13, and 30 at 2–3.)

     None of the named defendants have participated in this suit.  On September 13, 2023 (and October 4, 2023, as amended), electronic summonses were served on John Achten and AQR.  (Dkt. Nos. 4, 6, 7).  After Plaintiff filed an amended complaint, electronic summonses were issued on October 24 and 26, 2023 to John, Priscilla, and Ruby Achten, ACT III, and AQR. (Dkt. Nos. 9, 10, 11).  On November 11, 2023, the case was automatically stayed as to John Achten when he filed for bankruptcy, but that stay was lifted on January 5, 2024 when the

---

[1] SRS Distribution was purchased by the Home Depot, Inc., a Delaware corporation based in Georgia. (Dkt. No. 33 at 1.)

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 30) - 2

bankruptcy case was dismissed.[2]  (Dkt. No. 12, 13.)  On January 10, 2024, the summons and complaint were served on Priscilla and Ruby Achten and served by mail to AQR and ACT III. (Dkt. Nos. 14, 15, 16, 17.)  Plaintiff moved for service by mail as to John Achten pursuant to Fed. R. Civ. Pro. 4(e), alleging that he has been avoiding service to evade his creditors.  (*See* Dkt. No. 20).  This Court authorized service by mail and continued the initial status conference by at least 95 days to allow Achten to respond to the complaint.  (Dkt. No. 22.)  Achten was served by mail on March 7, 2024.  (Dkt. No. 25 at 2.)  To date, no defendant has responded to the complaint nor made an appearance in this case.  On July 3, 2024, Plaintiffs moved for default against the Achtens, AQR and ACT III, which the Clerk granted on July 17, 2024.  (Dkt. Nos. 26, 28.)  This motion for default judgment follows.

### III    DISCUSSION

#### A.  Jurisdiction and Venue

The Court is satisfied that it possesses jurisdiction in this matter under 28 U.S.C. § 1332(a)(1).  Plaintiff SRS Distribution is a Delaware corporation with its principal place of business in Texas.  (Dkt. No. 30 at 8).  Defendants John, Priscilla, and Ruby Achten are citizens of Washington and AQR and ACT III are Washington corporations.  (*Id.*)  The amount in controversy exceeds $75,000.  (*Id.*)  Further, venue in the Western District of Washington is proper because AQR is based in Tacoma, Washington and a substantial part of the events or omissions giving rise to the claim occurred in Tacoma.  (*Id.* at 8-9); 28 U.S.C. §§ 1391(b)(1), 1391(b)(2).

#### B.  Legal Standard

---

[2] Plaintiff provided a copy of an *ex parte* order from the bankruptcy court indicating that the case was dismissed due to debtor's failure to comply with an order to submit a bankruptcy plan. (Dkt. No. 13 at 3.)

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 30) - 3

The Court may enter a default judgment after a default has been entered by the Clerk. *See* Fed. R. Civ. Pro 55(b); LCR 55(a)-(b). "[T]he general rule [upon default] is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Allegations related to damages, however, must be supported with evidence. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–918 (9th Cir. 1987); *see also* Fed. R. Civ. P. 55(b)(2)(B). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the Court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–1472 (9th Cir. 1986).

Weighing the *Eitel* factors, the Court finds that entry of a default judgment is warranted as to Plaintiff's breach of contract claim, though not as to its other claims.

Factor 1: Possibility of Prejudice to Plaintiff

The first *Eitel* factor, prejudice to the Plaintiff, weighs in favor of Plaintiff. "On a motion for default judgment, 'prejudice' exists where the plaintiff has no 'recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal.2003)). Defendants' failure to answer or otherwise prosecute this case hinders Plaintiff's ability to recover, and the Court finds that a default judgment is Plaintiff's only means for recovery.

Factors 2 and 3: Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third factors, merits of plaintiff's claims and the sufficiency of the complaint, are often analyzed together. *Curtis*, 33 F. Supp. 3d at 1211. Plaintiff's amended complaint alleges claims for 1) breach of contract, 2) quantum meruit, 3) accounts stated, and 4) disgorgement of fraudulent transfers under the Uniform Voidable Transactions Act, Washington Revised Code § 19.40 *et seq*. (*See* Dkt. No 9 at 6–9.) Plaintiff's motion and proposed order of default judgement, however, make clear that it offers quantum meruit and accounts stated only in the alternative to breach of contract. (*See* Dkt. Nos. 30 at 11, 30-1 at 3.) As discussed below, the Court finds the breach of contract claim to be merited and sufficient, and so it does not reach Plaintiff's alternative second and third claims. However, the Court does not find Plaintiff's disgorgement of fraudulent transfers claim to be sufficient at this stage. For that reason, Factors 2 and 3 favor Plaintiff as to breach of contract but not as to fraudulent transfer.

i. <u>Breach of Contract</u>

"Generally, a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage." *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000). Here, Plaintiff has provided evidence of all three elements. Plaintiff entered into the record a copy of the Credit Application and Agreement executed between Stoneway and AQR, signed by AQR President John Achten and Vice President Tammy Achten.[3] (Dkt. No. 32-1.) That agreement includes a personal guarantee, under which John Achten "unconditionally guarantee[d] to SRS Acquisition Corporation the full and prompt payment . . . of all obligations which Guarantor presently or hereafter may have to SRS Acquisition Corporation." (*Id.* at 3.) Achten indemnified SRS as to "any losses SRS Acquisition

---

[3] The agreement is dated February 9, 2012 and is between John and Tammy Achten and Stoneway Roofing Supply "A Division of SRS Acquisition Corporation" and signed for Stoneway by Shayne Abston, a "Territory Manager/Branch." (Dkt. No. 32-1 at 3–4).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 30) - 5

Corporation may sustain and expenses SRS Acquisition Corporation may incur as a result of any failure of Guarantor to perform" including attorneys fees and costs. (*Id.*) That guarantee was "continuing" and in "full force until guarantor delivers to SRS Acquisition Corporation written notice revoking it as to indebtedness incurred subsequent to such delivery." (*Id.*) Further, the terms of sale provided that "[a]ny order for merchandise and/or services by Buyer shall constitute a representation that Buyer is solvent." (*Id.* at 5). The payment terms on invoices specified "1% 10th Prox Net 30th" (*Id.* at 2), meaning that payment was due within the month. (*See* Dkt. No. 30 at 4.) The Court finds there is clear evidence that a contract existed between AQR/John Achten and Stoneway. There is also evidence that AQR/Achten breached the contract by failing to pay for services rendered, in the form of a ledger provided by Plaintiff detailing its charges to AQR/Achten and the remaining unpaid balances (Dkt. No. 32-2), and accompanying invoices (Dkt. No. 32-3). These documents provide the basis for calculating Plaintiff's damages, discussed *infra*.

### ii. Disgorgement of Fraudulent Transfers

Plaintiff asserts a claim of fraudulent transfer against Defendants. Summarizing the elements of a fraudulent transfer claim, the Washington Supreme Court stated, "[i]n general, a fraudulent transfer occurs where one entity transfers an asset to another entity, with the effect of placing the asset out of the reach of a creditor, with either the intent to delay or hinder the creditor or with the effect of insolvency on the part of the transferring entity." *Thompson v. Hanson*, 239 P.3d 537, 539 (Wash. 2009) (en banc). The statute provides:

> (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>   (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

    (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (ii) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Wash. Rev. Code § 19.40.041(1).

The statute provides a list of factors to consider "[i]n determining actual intent":

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Wash. Rev. Code § 19.40.041(2).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 30) - 7

Further, the statute provides that "[a] creditor making a claim for relief under subsection (1) of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence." Wash. Rev. Code § 19.40.041(3).

Although the standard of proof is only preponderance, and Plaintiff has proffered some circumstantial evidence, the Court finds that Plaintiff's fraudulent transfer claim is insufficient based on the record before the Court.

Plaintiff alleges that the Achtens and AQR improperly transferred assets to a newly incorporated entity, ACT III, to evade creditors. (*See* Dkt. No. 9 at 9.) Plaintiff's pleadings and motion do not specify any dates or amounts of these transfer(s). However, Plaintiffs allege that "John Achten informed Stoneway personnel that he was transferring Achten Quality Roofing's assets, including equipment, to his daughters, Defendants Priscilla Achten and Ruby Achten." (*Id.* at 10). Plaintiff supports this claim with the declaration of Cory Cumbia, the Senior Director of Credit at SRS Distribution, who states:

> Stoneway learned of representations made by John Achten that he was "giving everything to his daughters." John Achten informed a Stoneway representative that he was giving all of AQR's assets, including equipment, to his daughters, Priscilla Achten and Ruby Achten. Stoneway uncovered that Defendants John Achten and AQR had moved and hid AQR's business assets, including but not limited to materials, supplies, and equipment, to a warehouse.

(Dkt. No. 32 at 3.)

As an initial matter, there is a question as to whether this statement is admissible evidence. A district court should only grant default judgement under Federal Rule of Civil Procedure 55 if it is "convinced that the facts meet the elements of the relevant cause of action— whether those facts are established by well-pleaded allegations or proven by admissible evidence." *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024); *see also Hoston v. J. R. Watkins*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 30) - 8

1  *Co.*, 300 F.2d 869, 870 (9th Cir. 1962) (declining to consider attorney affidavit as evidence for
2  summary judgement because it was inadmissible due to lack of personal knowledge); *JL*
3  *Beverage Company, LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (a court
4  may consider hearsay evidence for summary judgement, but only if it "would be admissible at
5  trial in some other form.").  Here, Cumbia does not state that he personally heard Achten say that
6  he would transfer his assets to his daughters, rather, he states that an unnamed employee of
7  Stoneway heard the statement.  Achten's statement may be excluded from hearsay as a statement
8  of a party opponent, but it would still have to be offered by someone with personal knowledge.
9  *See* Fed. R. Evid. 801(d)(2); *Hoston*, 300 F.2d at 870.  Even assuming Cumbia's declaration as to
10 Achten' statement is admissible, however, it is insufficient.  As noted, the declaration does not
11 identify the Stoneway employee to whom this statement was made, when it was made, in what
12 context, and what if any action that employee proceeded to take—such as reporting it to a
13 supervisor or documenting it in a report.  The statement likewise does not specify what
14 warehouse AQR assets were moved to, when they were discovered, or how Stoneway came to
15 learn that information.  Although Defendants have not responded to this lawsuit and Plaintiff's
16 information is thus understandably limited, these facts are within Plaintiff's knowledge.

17        Plaintiff has additionally proffered public records showing that Priscilla and Ruby Achten
18 formed the ACT III corporation in July 2023 and served as its officers, and dissolved the
19 corporation in October 2023.  (*See* Dkt. Nos. 31-1, 31-2.)  Further, ACT III had the same
20 registered address as AQR.  (*See id*, Dkt. Nos. 9 at 2, 30 at 14.)  There is also no doubt that
21 Priscilla and Ruby Achten, who are John Achten's daughters, qualify as "insiders" within the
22 meaning of Washington Revised Code § 19.40.041(2).  See Wash. Rev. Code §§ 19.40.011(8)(a)
23 (defining "insider" to include "[a] relative of the debtor"); 19.40.011(15) (defining "relative" to
24

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT (DKT. NO. 30) - 9

mean "an individual related by consanguinity within the third degree"). The Achtens' non-response to this suit and apparent unavailability is also relevant to the fraudulent transfer analysis, because Washington Revised Code § 19.40.041(2)(f) identifies absconding as a factor for determining intent.

Taken together, these facts provide circumstantial evidence as to a possible scheme between the Achtens to convey or conceal assets. What is missing from the complaint and supporting materials, however, is any information at all about what assets were transferred, at what time, and how those assets were ultimately disposed of. Beyond the circumstantial evidence of Achten's non-payment and abortive bankruptcy case, there is no direct evidence as to whether the transfer(s) had the effect of making AQR/Achten insolvent. While the Court is mindful that Defendants' absence from this case has prevented any discovery from taking place, more information is needed to establish Plaintiff's fraudulent transfer claim.

Finally, the Court finds Plaintiff's fraudulent transfer claim with respect to John Achten's conveyance of real property to likewise be insufficient. Plaintiffs provided a screenshot of a warranty deed, accessed through Pierce County's public website of recorded documents, showing that John Achten sold property to a non-party, Margarita Carrillo, recorded on July 14, 2023. (Dkt. No. 31-4 at 2). The property is on Lot 43 in Pierce County. (*Id.*) Plaintiffs also provided a screenshot from a public real estate listing website, Redfin, showing that a home in Graham, WA, located on Lot 43, sold for $1,150,000 on July 14, 2023 (*See* Dkt. No. 31-5 at 3, 6.) This is sufficient evidence to draw an inference that Achten sold real property in the amount of $1,150,000. However, there is no evidence in the record as to how Achten used the proceeds of the sale, including any transfer to or from AQR or ACT III, nor of the relationship, if any,

between Achten and the buyer. In short, while Plaintiff provided evidence of the conveyance, the record is insufficient to demonstrate that the conveyance was fraudulent.

Factor 4: The Sum of Money at Stake

The fourth *Eitel* factor "considers whether the amount of money requested is proportional to the harm caused." *Sun Life Assurance Co. of Canada v. Est. of Wheeler*, Case No. C19-0364-JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020). "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, Case No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, Case No. 18-CV-03510-LHK, 2019 WL 79036, at *7 (N.D. Cal. Jan. 2, 2019) (quoting *Trung Giang Corp. v. Twinstar Tea Corp.*, Case No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)).

Here, the outstanding balance owed to Plaintiff on its invoices is the best measure of the harm caused to it. The Court thus finds that the amount at stake as principal, $610,455.92, is proportionate, even though it is significant. Further, as discussed *infra*, the amount of interest Plaintiff is seeking, $77,067.97, is substantial, but not per se unreasonable. The fourth factor neither favors or disfavors any party.

Factors 5 and 6: The Possibility of a Dispute Concerning Material Facts and Excusable Neglect

The fifth and sixth factors favor default judgement. There is little possibility of material dispute of fact as to Defendants' breach of the contract. The contract terms are clearly stated, and Defendants did not perform. Were Defendants participating in this suit, they could dispute

the amount or veracity of outstanding invoices, or the extent or quality of Plaintiff's performance.  However, Defendants have chosen not to do so, and their failure to respond is inexcusable.  Defendants—three closely-related individuals and corporations under their control—have each been served multiple times (personally, and/or by mail) and none of them have responded to the suit nor made an appearance, a year after the first complaint was filed.  If Defendants suffer from any hardship that prevents them from participating in this case or paying their debts, they have not availed themselves of the opportunity to advise the Court and Plaintiff of those reasons.  Instead, the Court can only conclude that their non-response is the result of a coordinated strategy of evasion.

<u>Factor 7: The Preference for Resolving Disputes on the Merits</u>

The final *Eitel* factor recognizes "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1472.  However, Defendants' failure to participate in this case makes disposition on the merits practically impossible.  The seventh factor weighs against default judgement, though this does not alter the result.  *See PepsiCo, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) ("the mere existence of Fed.R.Civ.P. 55(b) indicates that 'this preference [for merits decisions], standing alone, is not dispositive.'").

<u>Summary of *Eitel* Factors</u>

On balance, the weight of the *Eitel* factors favors default judgement as to Plaintiff's breach of contract claim. As a result, Plaintiff is entitled to damages, as discussed below.  The weight tips against default judgement as to Plaintiff's fraudulent transfer claim, however, due to insufficiency of the currently available evidence.

**C. Damages**

Plaintiff is entitled to damages resulting from Defendants' breach of contract, consisting of three categories: principal owed, pre and post-judgment interest, and attorneys fees and costs.

### i. Principal

Plaintiff's principal damages are the amount owed on the contract. "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give that party the benefit of the bargain by awarding him or her a sum of money that will, to the extent possible, put the injured party in as good a position as that party would have been in had the contract been performed." *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 146 (Wash. 1990) (en banc). Further, "[t]he rule in Washington on the question of the sufficiency of the evidence to prove damages is: '[T]he fact of loss must be established with sufficient certainty to provide a reasonable basis for estimating that loss.'" (*Id.*) (quoting *Haner v. Quincy Farm Chems., Inc.*, 649 P.2d 828 (1982)). Here, Plaintiff has provided a ledger of charges accrued by AQR/Achten, with a total balance of $670,055.40, and an outstanding balance of $610,455.92. (Dkt. No. 32-2). Plaintiff likewise provided invoices for each of AQR/Achten's orders, detailing the material and quantity ordered. (Dkt. No. 32-3.) The Court finds that the measure of damages is the outstanding balance on the account, $610,455.92.

### ii. Interest

In addition to the outstanding balance due, Plaintiff seeks interest in the amount of $77,067.97. Plaintiff calculates this figure using a 12% annual rate of interest, starting from August 1, 2023, the date at which the most recent of its invoices came due, and continuing through August 19, 2024 (three days before the motion was filed). (*See* Dkt. Nos. 30 at 16–17, 32 at 4, 32-2 at 7.) The contract between Stoneway and Achten provided that "[a] service charge of one-and-one-half percent (1-1/2%) per month or eighteen percent (18%) per annum may be

assessed on delinquent invoices but not to exceed, at any time, the highest rate of interest legally allowed." (Dkt. No. 32-1 at 2.)  The legal maximum interest rate in Washington is 12% per annum.  Wash. Rev. Code § 19.52.020(1)(a).  Washington law provides a penalty for a contract at a usurious rate, under which the creditor is only entitled to the principal *less* the interest at the rate contracted for.  Wash. Rev. Code § 19.52.030.  But the defense of usury does not apply to a contract made for "business purposes."  Wash. Rev. Code § 19.52.080. These provisions create a question as to construction and enforceability of the interest clause.

      The Court finds that the interest clause is enforceable at a 12% rate, for two reasons.  One, the savings clause incorporates the legal maximum interest rate by reference.  Two, the Court finds that the business purpose exception applies.  Business purpose is a "mixed question of law and fact," for the court to "decide as a matter of law."  *Am. Rsch. Cap. LLC v. H NU Photonics LLC*, Case No. C22-607-MLP, 2022 WL 22258089 at *2 (W.D. Wash. Aug. 18, 2022) (internal quotation omitted).  The court should consider "the purpose of the loan, not the identity of the debtor or guarantor" and "'purpose' is established by 'the representations the borrower makes to the lender at the time the loan is procured.'"  *Id.*  Here, the Court finds that this contract was for business purposes, as presumably the purpose was to supply AQR with materials for its business, not for Achten's personal use.  Further, the Court cannot say that 12% is per se unreasonable, when it is the legal maximum permitted by the State of Washington.  Therefore, the Court will grant default to Plaintiff on its claim for $77,067.97 in interest, calculated at 12% annually from the time the last invoice came due through (approximately) the date of its motion.  Plaintiff will also be entitled to post judgement interest pursuant to 28 U.S.C. § 1961.

      iii.   <u>Attorneys' Fees and Costs</u>

Finally, Plaintiff seeks attorneys' fees and costs of collection. The contract provides that "[i]n the event of default, and if this account is turned over to an agency and/or an attorney for collection, the undersigned agrees to pay all reasonable attorneys' fees, and/or costs of collection whether or not suit is filed." (Dkt. 32-1 at 2). Washington law makes such a clause enforceable. *See* Wash. Rev. Code §§ 4.84.330; 4.84.010. The Court thus grants Plaintiff's default motion for reasonable attorneys' fees and costs, which Plaintiff shall document in a future motion.

## IV    CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Default Judgement as to its breach of contract claim and resulting damages. The Court does not reach Plaintiff's alternate quantum meruit and accounts stated claims and DENIES Plaintiff's motion as to its fraudulent transfer claim.

Plaintiff is GRANTED judgment against Defendants Achten's Quality Roofing & Construction, Inc. and John Achten in the amount of $610,455.92, and prejudgment interest in the amount of $77,067.97. Any post-judgment interest shall accrue and be calculated as specified in 28 U.S.C. § 1961. The Court GRANTS reasonable attorney fees and costs; Plaintiff shall file a motion for attorney fees no later than September 23, 2024.

Dated this 9th day of September 2024.

David G. Estudillo
United States District Judge