| | |
|---|---|
| SRS DISTRIBUTION INC.,<br><br>                    Plaintiff,<br><br>         v.<br><br>ACHTEN QUALITY ROOFING INC. et al.,<br><br>                    Defendant. | CASE NO. 3:23-cv-05823-DGE<br><br>ORDER MOTION GRANTING ATTORNEYS FEES AND COSTS (DKT. NO. 36) |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

### I     INTRODUCTION

Before the Court is Plaintiff's Motion for Attorneys Fees and Costs (Dkt. No. 36). For the reasons that follow, the motion is GRANTED.

### II     BACKGROUND

The Court assumes familiarity with the facts of this case, which are outlined in its Order Granting In Part and Denying In Part Plaintiff's Motion for Default Judgement. (*See* Dkt. No. 34.) Briefly, Plaintiff SRS Distribution, Inc., doing business as Stoneway Roofing Supply ("Stoneway"), is a supplier of construction materials. (*Id.* at 1–2.) Defendants John Achten and

1  Achten's Quality Roofing & Construction, Inc. ("AQR") procured and failed to pay for a large
2  quantity of materials from Stoneway.  (*See id.* at 2.)  Defendants have failed to respond to this
3  suit or participate in any manner.  (*Id.*)  The Court previously granted Plaintiff default judgement
4  in the amount of $610,455.92 for breach of contract, plus $77,067.97 in pre-judgement interest
5  and additional post-judgement interest that may accrue under 28 U.S.C. § 1961, and denied
6  default judgement as to Plaintiff's fraudulent transfer claim.  (*Id.* at 15; Dkt. No. 35.)  The Court
7  further awarded Plaintiff reasonable attorneys fees and costs.  (*Id.*)  Pursuant to this Court's prior
8  order, and Federal Rule of Civil Procedure 54(d)(2), Plaintiff now moves for $103,119 in
9  attorneys fees and $4,717.90 in costs.

10       Plaintiff's motion is supported by the declaration of Allen W. Estes, III.  (Dkt. No. 37.)
11  According to the declaration, a total of four attorneys performed work on this matter for Plaintiff.
12  (*Id.* at 2.)  Those attorneys included: Mr. Estes, a partner who has been licensed to practice since
13  the year 2000, Nicole Lentini, a partner who has been licensed since 2005, and Jonathan Shi and
14  Gagandeep Sidhu, two associates both licensed since 2018.  (*Id.*)  The billable rates for the
15  attorneys were $510 per hour each for the partners and $350 each for the associates.  (*Id.*)  Those
16  rates were negotiated with the Plaintiff for this matter and, according to Mr. Estes, are
17  commensurate with rates charged to other clients in construction litigation in the Seattle/Tacoma
18  market.  (*Id.*)  In total, the firm spent 293 hours on representation for this matter.  (*Id.* at 3.)  The
19  declaration includes billing entries with narratives for each of the four attorneys, though counsel
20  did not add up the total number of hours spent on this matter per attorney involved.  (*See* Dkt No.
21  37-3).  The motion states that time was removed related to claims that were not successful.  (Dkt.
22  Nos. 36 at 7, 37 at 3.)  The time does include Plaintiff's efforts to secure "a series of mechanic's
23  liens on AQR project-related properties for which AQR had ordered and used Stoneway's
24

1  materials." (Dkt. No. 36 at 5–6.)  Plaintiff did not attempt to segregate time between Defendants
2  John Achten and AQR, and argues that doing so is neither required nor practicable.  (*See* Dkt.
3  No. 36 at 6) (citing *Ewing v. Glogowski*, 394 P.3d 418 (Wash. Ct. App. 2017)).

### III  DISCUSSION

a. Attorneys Fees

The lodestar method is "the default principle for fee calculation in Washington."  *Brand v. Dep't of Labor & Indus.*, 989 P.2d 1111, 1119 (Wash. 1999) (Talmadge, J., concurring).  Washington law presumes that a properly calculated lodestar figure represents reasonable compensation for counsel.  *Henningsen v. Worldcom, Inc.*, 9 P.3d 948, 959 (Wash. Ct. App. 2000). The lodestar method multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).  After calculating this, courts may consider twelve factors in determining whether it is necessary to adjust the presumptively reasonable lodestar figure, to the extent they are relevant.  *Id.* at 252 & n.4; *see Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992), (describing the twelve factors).  Here, the Court considers two primary factors: time and labor required (hours) and customary fee (rate).

Plaintiff asserts that its calculation of $103,119 in attorneys fees represents a reasonable figure.  (*See* Dkt. 36 at 4–5.)  The Court's ability to independently assess the reasonableness of the fee request is significantly impeded by Defendants' failure to participate in this litigation and resulting failure to subject Plaintiff's calculations to adversarial scrutiny.  Thus, the Court relies on the evidence available to it: the declaration of Plaintiff's attorney.  Based on that evidence, the Court finds that the rate and hours charged are reasonable.

          i. Rate

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The court may also rely on its own knowledge and experience in determining what rates are reasonable. *See Salyer v. Hotels.com GP, LLC*, Case No. C13-1966-RSL, 2015 WL 3893079, at *2 (W.D. Wash. June 23, 2015) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). Further, the Washington Supreme Court has noted that "[w]here the attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate." *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983) (en banc).

Here, the Court finds that the rates charged by the attorneys are reasonable relative to the prevailing market rate. The two partners working on the case have been practicing law for twenty-four and nineteen years, respectively. (Dkt. No. 37 at 2.) The two associates were each in their sixth year of practice. (*Id.*) These rates were established via negotiation with the client

and commensurate with rates charged to other clients in similar matters. (*See id.*) In the Court's experience, rates of $510 and $350 per hour respectively are reasonable for attorneys of that level of experience in the Seattle/Tacoma market.

### ii. Hours

The determination of fees "should not result in a second major litigation" and trial courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The essential goal in shifting fees "is to do rough justice, not to achieve auditing perfection." *Id.* Trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* "There is no precise rule or formula for making these determinations." *Hensley v. Eckerhart*, 461 U.S. 424, 436–437 (1983). In determining an appropriate attorney's fee, the "result is what matters" and the most critical factor is "the degree of success obtained." *Id.* at 435–436. Nonetheless, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). A district court may do so using one of two methods: (1) it may conduct an "hour-by hour analysis of the fee request"; or (2) "when faced with a massive fee application" the court may "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal citations omitted).

Here, Plaintiff's legal team spent a total of 293 hours working on this matter. (Dkt. No. 37 at 3.) At first blush, that strikes the Court as a large or excessive amount of time to prepare a complaint, serve process, and obtain a default judgement. Upon closer examination however, the Court concludes that the hours are justified by extenuating circumstances in this litigation.

Plaintiff's motion, declaration, and itemized billing entries indicate that Plaintiff's counsel spent a significant amount of time securing mechanic's liens on properties where Achten/AQR used Stoneway supplies to secure repayment. (*See* Dkt. 36 at 6; *See generally* Dkt. No. 37-3.) Counsel also expended time investigating the status of Achten's bankruptcy proceeding, which impacted this litigation. (*See e.g.*, Dkt. Nos. 37-3 at 2–8, 13–15; 34 at 2–3.) As noted in the Court's order granting default judgement on Plaintiff's breach of contract claim, the contract between Stoneway and Achten/AQR provides that "[i]n the event of default, and if this account is turned over to an agency and/or an attorney for collection, the undersigned agrees to pay all reasonable attorneys' fees, and/or costs of collection whether or not suit is filed." (Dkt. Nos. 32-1 at 2; 34 at 15.) Washington Revised Code § 4.84.330 provides that when a "contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties" such a clause is enforceable. In this case, the hours spent on the liens and related bankruptcy matter are part of the contract's "costs of collection."

Further, the liens arise from the same "common core of facts" as the breach of contract claim and thus time spent on the liens need not be segregated. *Cf. Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (successful and unsuccessful claims need not be disaggregated for fee awards when they arise from the same "common core of facts" or are based on "related legal theories"); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) ("work performed in pursuit of the unrelated claims may be inseparable from that performed in furtherance of the related or successful claims"). In *Kinnebrew v. CM Trucking & Const., Inc.*, 6 P.3d 1235 (Wash. Ct. App. 2000), the Washington Court of Appeals considered attorneys fees in a case where a construction company prevailed on its breach of contract claim for failure to pay

for time and materials, and the vendor also filed a lien on the property. Although the lien was released prior to trial, and the trial concerned only the breach of contract claim, the court held that appellant was entitled to attorneys fees for the lien under Washington Revised Code § 60.04.181 because appellant's lien claim had initiated the litigation. *Id.* at 1238. Although the posture here is somewhat different, the Court finds that similar reasoning applies, in that the liens and breach of contract claim are closely related.

Thus, taking the full scope of the litigation into consideration, the Court finds that 293 hours is reasonable, and awards the full amount of claimed fees.

      b. Costs

Plaintiff seeks $4,717.90 in reasonable expense costs. (Dkt. No. 36 at 2.) Those costs include: $3,737.03 in filing fees, $943.40 in process service fees, and $37.47 in messenger delivery services. (*Id.* at 7.) Washington Revised Code 4.84.010 lists the types of costs that are recoverable for a prevailing party, and specifically includes filing fees and process serving fees. Wash. Rev. Code § 4.84.010(1)–(2). And as noted above, the contract between Stoneway and Achten/AQR made the latter liable for all "costs of collection." (Dkt. No. 32-1 at 2.) For those reasons, the Court awards Plaintiff its litigation costs.

## IV   CONCLUSION

Therefore, Plaintiff's motion for reasonable attorneys fees and costs is GRANTED. Plaintiff is awarded $103,119 in attorneys fees and $4,717.90 in costs, for a total of $107,836.90.

Dated this 30th day of September, 2024.

David G. Estudillo
United States District Judge